IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM J. BEARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 06-G-0933-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, William J. Beard, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Supplemental Security Income benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether he has a severe impairment;

    (3)    whether his impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform his past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

  In the instant case, ALJ Randall C. Stout determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Stout found that:

> The claimant's history of microlumbar diskectomy and laminectomy on the left side at L5/S1 level and L4/L5 level, alcohol abuse in early remission, anterior [wedge] deformities at T/11, T/12, and L/1, depression, and anxiety are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

[R. 20]. The ALJ found that the plaintiff has the residual functional capacity to perform a significant range of light work. [R. 20].

The plaintiff claims he is unable to work since October of 2002 because of back pain. Although he has had two back surgeries, his pain persists at what he rates as a seven on a scale of one to 10. [R. 248]. The plaintiff testified that his pain is constant, and that he must elevate his legs six to seven hours a day. [R. 248]. He also testified that his pain affects his ability to concentrate, and that his medical and financial situation cause him to experience depression. [R. 250].

In October 2002, the plaintiff was working as a plumber when he injured his back while lifting heavy equipment. [R. 244]. On November 1, 2002, he was prescribed physical therapy by T. Scott Powers, M.D., of the Occupational Health Center at Cullman Regional Medical Center, for acute recurrent low back pain and degenerative disc disease. [R. 140]. On March 3, 2003, the plaintiff underwent microlumbar discectomy and laminectomy of the left L4-5, L-5 and S-1 vertebrae. His treating

7

surgeon, Cyrus Ghavam, M.D., found a "disc protrusion L-5, S-1 with transverse annualr tear with small amount of herniated disc tissue in a caudal direction from L-4-5 with disc protrusion without frank herniation at L-5, S-1." [R. 108].  After recovering from this surgery, the plaintiff continued physical therapy until May 27, 2003, when his doctor advised him to stop because of increased pain.  [R. 115-140].

On July 9, 2003, the plaintiff underwent a discography of the lumbar spine by Rod Gantt, M.D. which showed marked degeneration at L2-3, L3-4 and L4-5.  [R. 143-144].  On October 6, 2003, the plaintiff received an epidural block at L3-4 [R. 150], but two weeks later stated that the block had not helped at all.  [R. 155].  On November 14, 2003, Dr. Ghavam concluded that further surgery would not be helpful, and referred the plaintiff to Keith Anderson, D.O., for pain management.  [R. 153].  The plaintiff reported to Dr. Anderson that his pain was "an eight on a zero to ten scale."  [R. 161].

Eighteen months after the plaintiff's back surgery, an MRI of his lumbar spine showed multilevel degenerative disc disease with a prominent central protruded disc at L3-4 and left foraminal stenosis at L5-S1.  [R. 200].  The plaintiff underwent a second microdiscectomy on October 11, 2004, and Dr. Ghavam found "[m]oderate peridural fibrosis limited L5 nerve root mobilization with contained herniated disc L4-L5 left side."  [R. 196].

The ALJ found that the plaintiff met the first part of the Eleventh Circuit's pain standard, but found that neither prong of part two is met.  [R. 16].  In doing so, ALJ Stout found:

> The claimant testified that his pain was 7/10 every day with medication and had difficulty concentrating. However, at one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant reported watching television and reading (Exhibit 3E). Such activities require a certain amount of concentration and are inconsistent with disabling pain.

[R. 16-17]. In his Daily Activities Questionnaire, the plaintiff answered that he sleeps in increments of one to two hours at a time, that he occasionally requires assistance with dressing (pants, socks and shoes), and that he cannot stand for any period of time. [R. 66-71]. He does not perform household chores because of the pain. [R. 68]. He watches the news or sitcoms on television for 20 minutes at a time, and reads books, magazines and newspapers for two hours at a time. [R. 68].

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room

9

<blockquote>excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.</blockquote>

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.

Additionally, the ALJ concluded that there were "significant treatment gaps in the claimant's history of treatment." [R. 17]. He cites a gap between March and November 2003 where the plaintiff did not return to Dr. Ghavam, at which time he was referred to pain management. [R. 17]. A fair reading of the record shows that during this "gap," the plaintiff was continuing physical therapy until May of 2003, when his doctor advised ceasing this activity because of increased pain. Moreover, the plaintiff saw Dr. Gantt in July 2003 for a discography. In February and June 2004, the plaintiff saw Dr. Anderson for pain management. At the hearing, the plaintiff explained that it was difficult for him to seek current treatment because of his financial situation and pending workman's compensation claim. [R. 254-255]. Poverty excuses noncompliance with prescribed treatment. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).

The ALJ also held:

> Moreover, given the claimant's allegations of disabling pain symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet, a review of the record in this case reveals no restrictions recommended by the treating doctor.

[R. 17]. Despite overwhelming medical evidence, the ALJ substituted his own medical opinion based on the absence of a treating physician's opinion. The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

Undoubtedly, the plaintiff meets the Eleventh Circuit's pain standard. The ALJ's conclusion to the contrary is not supported by substantial evidence. As Judge

11

Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

After testifying to the availability of jobs the plaintiff could perform the VE testified as follows:

ALJ:  Okay. Now do all of these jobs require a certain level of attendance?

VE:  Yes.

ALJ:  In other words, if the claimant had to miss more than two days of work on a monthly basis, would that affect these jobs or any other unskilled light or sedentary jobs?

VE:  Yes, sir.

ALJ:  Okay. Would any of them allow the claimant to take periodic breaks outside of the usually scheduled work breaks?

VE:  No.

ALJ:  Okay. Would any of them allow the claimant to periodically elevate his legs and, or lie down on an as needed basis?

VE:  No, Your Honor.

[R. 260]. The plaintiff had previously testified that he must recline and elevate his legs six to seven hours per day. [R. 248]. Because the ALJ did not properly discredit the plaintiff, his testimony must be accepted as true.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 4 January 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.